LATHAM & WATKINS LLP
Michael H. Rubin (CA Bar No. 214636)
 *michael.rubin@lw.com*
Melanie M. Blunschi (CA Bar No. 234264)
 *melanie.blunschi@lw.com*
Francis J. Acott (CA Bar No. 331813)
 *francis.acott@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

*Attorneys for Defendant Pindrop Security, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DIANA PACKBIERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PINDROP SECURITY, INC.,<br><br>Defendant. | Case No.: 4:22-cv-04926-HSG<br><br>**DEFENDANT PINDROP SECURITY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 2, 2023<br>Time: 2:00 p.m.<br>Court: Courtroom 2, 4th Floor<br>Hon. Haywood S. Gilliam, Jr. |

1 | **NOTICE OF MOTION AND MOTION TO DISMISS**

2 | **TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3 | PLEASE TAKE NOTICE that on March 2, 2023 at 2:00 p.m. or as soon thereafter as the

4 | parties may be heard, in Courtroom 2 of the United States District Court, for the Northern District

5 | of California, located at 1301 Clay Street, Oakland, California, the Honorable Haywood

6 | S. Gilliam, Jr. presiding, Defendant Pindrop Security, Inc. ("Pindrop") will, and hereby does, move

7 | the Court for dismissal of this action (the "Motion").

8 | Pindrop respectfully submits this Motion pursuant to (a) Federal Rule of Civil Procedure

9 | ("Rule") 12(b)(1) on the ground that Plaintiff lacks Article III standing because she did not suffer

10 | any concrete, particularized harm traceable to Pindrop; (b) Rule 12(b)(6) on the ground that

11 | Plaintiff does not allege facts sufficient to state a violation of California Penal Code § 637.3; and

12 | (c) Rule 12(b)(2) on the ground that Pindrop is not subject to personal jurisdiction in California.

13 | The Motion is based upon the accompanying Memorandum of Points and Authorities, the

14 | Declarations of Melanie M. Blunschi, Andres J. Olveira, Janette Gustafson, and Kieran King, filed

15 | and served concurrently herewith, the pleadings and other papers on file herein, and such argument

16 | and evidence as may be presented in connection with the hearing on this Motion.

17 | **STATEMENT OF RELIEF SOUGHT**

18 | Pindrop seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2),

19 | and 12(b)(6) dismissing Plaintiff's Class Action Complaint for the reasons set forth herein.

20 | Dated: October 28, 2022                     LATHAM & WATKINS LLP

21 |

22 | By  */s/ Melanie M. Blunschi*
   | Michael H. Rubin
   | michael.rubin@lw.com

23 | Melanie M. Blunschi
   | melanie.blunschi@lw.com

24 | Francis J. Acott
   | francis.acott@lw.com

25 | 505 Montgomery Street, Suite 2000
   | San Francisco, California 94111-6538

26 | Telephone: +1.415.391.0600

27 | *Attorneys for Defendant Pindrop Security, Inc.*

28 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND ............................................................................................................. 3

    A.   The Parties ......................................................................................................... 3

    B.   Plaintiff's Allegations ........................................................................................ 4

    C.   Plaintiff's Agreements With Bank Of The West .................................................. 5

    D.   Procedural History ............................................................................................. 5

III. ARGUMENT ................................................................................................................. 6

    A.   Plaintiff Lacks Article III Standing .................................................................... 6

        1.   Legal Standard ....................................................................................... 6

        2.   Plaintiff's Allegations Are Facially Insufficient To Establish Standing ................................................................................... 7

        3.   The Record Confirms That Plaintiff Lacks Standing ............................. 10

    B.   Plaintiff Has Not Stated A Claim Against Pindrop ........................................... 11

        1.   Legal Standard ..................................................................................... 12

        2.   Section 637.3(a) Does Not Apply To The Conduct Plaintiff Alleges ................................................................................................. 12

        3.   Plaintiff Does Not Allege Injury, As Required By Section 637.3(c) ..................................................................................... 16

        4.   Plaintiff Has Not Pled A Basis For Equitable Relief ............................. 17

    C.   Pindrop Is Not Subject To Personal Jurisdiction In California .......................... 18

        1.   Legal Standard ..................................................................................... 18

        2.   Pindrop Is Not Subject To General Jurisdiction In California ................................................................................................ 19

        3.   Pindrop Is Not Subject To Specific Jurisdiction In California ................................................................................................ 19

IV.  CONCLUSION ............................................................................................................. 23

**TABLE OF AUTHORITIES**

**CASES**

*Alexandria Real Estate Equities, Inc. v. RUNLABS (UK) Ltd.*,
 No. 18-CV-07517-LHK, 2019 WL 4221590 (N.D. Cal. Sept. 5, 2019) ............................ 21

*Antman v. Uber Techs., Inc.*,
 No. 3:15-cv-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ............................ 15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................ 12

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*,
 33 F.4th 1107 (9th Cir. 2022) ............................................................................................ 13

*Automobile Protection Corp. v. Jones*,
 No. 1:04-CV-2368-WBH, 2005 WL 8154748 (N.D. Ga. Feb. 1, 2005) ............................ 22

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
 874 F.3d 1064 (9th Cir. 2017) ............................................................................................ 19

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
 11 F.4th 972 (9th Cir. 2021) .......................................................................................... 22, 23

*Balboa Capital Corp. v. Shaya Med. P.C. Inc.*,
 No. SACV2100831CJCJDEX, 2021 WL 6104013 (C.D. Cal. Sept. 7, 2021) .................... 20

*Barranco v. 3D Sys. Corp.*,
 952 F.3d 1122 (9th Cir. 2020) ............................................................................................ 18

*Bateman v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
 423 F. App'x 763 (9th Cir. 2011) ...................................................................................... 17

*Baton v. Ledger SAS*,
 No. 21-CV-02470-EMC, 2021 WL 5226315 (N.D. Cal. Nov. 9, 2021) ...................... 20, 21

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................... 12, 13

*Birdsong v. Apple, Inc.*,
 590 F.3d 955 (9th Cir. 2009) ................................................................................................ 7

*Brodsky v. Apple Inc.*,
 445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................................ 11

*Bungie, Inc. v. Thorpe*,
 No. 21CV05677EMCDMR, 2021 WL 5178825 (N.D. Cal. Nov. 8, 2021) ........................ 20

*Caces-Tiamson v. Equifax*,
  No. 20-CV-00387-EMC, 2020 WL 1322889 (N.D. Cal. Mar. 20, 2020) ........................... 21

*Casillas v. Madison Avenue Assocs., Inc.*,
  926 F.3d 329 (7th Cir. 2019) ............................................................................................... 9

*Cell Assocs., Inc. v. Nat'l Institutes of Health, Dep't of Health, Ed. & Welfare*,
  579 F.2d 1155 (9th Cir. 1978) ............................................................................................. 17

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................................................................... 6, 7

*Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*,
  No. 20-CV-08493-LHK, 2021 WL 3053201 (N.D. Cal. July 20, 2021) ........................... 22

*Courthouse News Serv. v. Planet*,
  750 F.3d 776 (9th Cir. 2014) ............................................................................................... 7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...................................................................................................... 18, 19

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ........................................................................................................... 18

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
  141 S. Ct. 1017 (2021) ................................................................................................. 19, 22

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................................. 6

*Hallmark Specialty Ins. Co. v. Continental Ins. Co.*,
  No. 20-17314, 2022 WL 382037 (9th Cir. Feb. 8, 2022) ................................................... 12

*Harty v. W. Point Realty, Inc.*,
  28 F.4th 435 (2d Cir. 2022) ................................................................................................. 9

*Heckart v. A-1 Self Storage, Inc.*,
  415 P.3d 286 (Cal. 2018) ..................................................................................................... 14

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......................................................................... 8, 11

*Hernandez v. Hillsides, Inc.*,
  211 P.3d 1063 (Cal. 2009) ................................................................................................... 9

*Hungerstation LLC v. Fast Choice LLC*,
  No. 19-cv-05861-HSG, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ........................... 20, 22

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................................. 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCCISO

iii

PINDROP SECURITY'S MOT. TO DISMISS
CASE NO. 4:22-cv-09426-HSG

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................... 16

*Jarman v. HCR ManorCare, Inc.*,
   471 P.3d 1001 (Cal. 2020) ........................................................................................... 17

*Ji v. Naver Corp.*,
   No. 21-cv-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ......................... 18, 19

*Khachatourian v. Hacienda La Puente Unified School Dist.*,
   572 Fed. App'x 556 (9th Cir. May 16, 2014) ...................................................................... 8

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) .......................................................................................... 7

*Martinez v. Combs*,
   231 P.3d 259 (Cal. 2010) .............................................................................................. 13

*Murray v. Time Inc.*,
   No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012), *aff'd*,
   554 F. App'x 654 (9th Cir. 2014) ..................................................................................... 9

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) ............................................................................. 7

*Pacific Gas & Elec. Co. v. Sup. Ct.*,
   10 Cal. App. 5th 563 (2017) .......................................................................................... 16

*People v. Bullard*,
   460 P.3d 262 (Cal. 2020) .............................................................................................. 13

*People v. Ellis*,
   421 P.2d 393 (Cal. 1966) ................................................................................................ 8

*People v. Tarsia*,
   405 N.E. 2d 188 (N.Y. Ct. App. 1980) ............................................................................. 12

*Price v. Apple, Inc.*,
   No. 21-CV-02846-HSG, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) ................................ 18

*Rain Design, Inc. v. Spinido, Inc.*,
   No. 17-CV-03681-JSC, 2018 WL 7269019 (N.D. Cal. Nov. 15, 2018) ............................... 21

*Ramirez v. Bank of Am., N.A.*,
   No. 4:22-cv-00859-YGR, 2022 WL 2313151 (N.D. Cal. June 15, 2022) .......................... 23

*Reflex Media, Inc. v. Chan*,
   No. SACV16795JFWJEMX, 2020 WL 6694316 (C.D. Cal. Oct. 30, 2020) ...................... 22

*Riverview Fire Prot. Dist. v. Workers' Comp. Appeals Bd.*,
   23 Cal. App. 4th 1120 (1994) ......................................................................... 13

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) .......................................................... 20

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................. 19, 22

*Sierra Club v. Sup. Ct.*,
   302 P.3d 1026 (Cal. 2013) ...................................................................... 2, 12

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .................................................................... 3, 18

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................ 6, 10

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .............................................................................. passim

*United States v. Dionisio*,
   410 U.S. 1 (1973) ............................................................................................ 8

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) ....................................................................... 11

*United States v. Mara*,
   410 U.S. 19 (1973) .......................................................................................... 8

*Vallarta v. United Airlines, Inc.*,
   497 F. Supp. 3d 790 (N.D. Cal. 2020) ..................................................... 12, 19

*Vidrio v. United Airlines, Inc.*,
   No. CV157985PSGMRWX, 2022 WL 1599918 (C.D. Cal. May 6, 2022) .................. 17

*Walden v. Fiore*,
   571 U.S. 277 (2014) ......................................................................... 3, 18, 20, 21

## STATUTES

Cal. Civ. Code § 1798.140 .......................................................................... 10

Cal. Penal Code § 637.2 .............................................................................. 17

Cal. Penal Code § 637.3 ....................................................................... passim

Cal. Stats. 1967, c. 1509 § 1 ...................................................................... 17

**RULES**

Fed. R. Civ. P. 12 ................................................................................................................ *passim*

Fed. R. Evid. 201 ....................................................................................................................... 14

**REGULATIONS**

16 C.F.R. § 681.1 .................................................................................................................. 15, 16

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether Plaintiff's claim against Pindrop should be dismissed under Rule 12(b)(1) because Plaintiff does not (and cannot) allege that she suffered any concrete, particularized harm, and therefore lacks Article III standing;

2.  Whether Plaintiff's claim against Pindrop should be dismissed under Rule 12(b)(6) because (a) California Penal Code Section 637.3 does not apply to the conduct alleged as a matter of law, (b) Plaintiff does not allege she was actually "injured by" the purported examination of her voice print, as required by Section 637.3(c), and (c) Plaintiff's request for equitable relief is neither authorized by the statute nor adequately pled; and

3.  Whether Plaintiff's claim against Pindrop should be dismissed under Rule 12(b)(2) because (a) Plaintiff does not allege general personal jurisdiction, nor could she, as Pindrop is a Georgia-based, Delaware-incorporated company that is not "at home" in California, and (b) there is no specific personal jurisdiction, as Plaintiff does not (and cannot) allege that Pindrop intentionally targeted California or that Plaintiff's claim arises out of Pindrop's limited connections with California.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCCISO

vii

PINDROP SECURITY'S MOT. TO DISMISS
CASE NO. 4:22-cv-09426-HSG

## I.     INTRODUCTION

This lawsuit seeks to contort the law to punish entirely lawful and affirmatively helpful conduct that protects consumers from thieves and fraudsters. Plaintiff Diana Packbiers sues under a never-before-used provision of the California Penal Code that was passed in 1978, when legislators responded to fears that pocket-sized lie detectors would be secretly unleashed on an unsuspecting public by requiring notice and consent before "voice prints" or "voice stress patterns" could be examined to "test the truth or falsity" of statements. But the law only allows someone actually "injured by" an unauthorized voice analysis to sue. Cal. Penal Code § 637.3. This law does not apply here: there is no lie detector, and no one has been injured. Plaintiff's sole grievance is that her bank—allegedly—used software from Defendant Pindrop Security, Inc. ("Pindrop") to *protect* her account by authenticating her as a real bank customer before granting her access to her account, each time *after* the bank's automated telephone system told her that her "voice may be used to verify [her] identity." Gustafson Decl. ¶ 9.[1]

The Complaint fails multiple times over: Plaintiff lacks standing under Article III because she suffered no harm, fails to adequately allege a violation of Section 637.3, and cannot establish a basis for personal jurisdiction over Georgia-based Pindrop.

***First***, Plaintiff lacks Article III standing because she was not harmed at all—let alone harmed in a concrete, particularized way that is "traditionally recognized" by American courts, as required to establish Article III standing under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). To be clear, Plaintiff is not claiming that her bank account was breached (it was not) or that she has suffered an actual injury of any kind (she has not). Rather, she claims that an alleged technical violation of Section 637.3 "exposed" her to unidentified "risks and harmful conditions." Dkt. 1 ("Compl.") ¶ 29. But under *TransUnion*, even if Pindrop had violated Section 637.3 (it did not), the California legislature cannot create a cognizable harm where none previously existed under the common law, and in any event, a risk of future harm cannot found a claim of standing.

---

[1] Pindrop concurrently submits the Declarations of Janette Gustafson ("Gustafson Decl.") and Andres J. Olveira ("Olveira Decl.") in support of its factual attack on standing under Rule 12(b)(1), and the Declaration of Kieran King ("King Decl.") in support of its challenge to personal jurisdiction. Pindrop's arguments under Rule 12(b)(6) do not rely on these declarations.

*TransUnion*, 141 S. Ct. at 2209–10. Without a cognizable privacy injury, Plaintiff's only remaining allegation of harm is that she was not properly "inform[ed]" that her voice would be used "to determine the truth or falsity of [her] statements." Compl. ¶ 22. Because she does not allege any downstream consequences, that theory represents (at most) the kind of "informational injury" that "cannot satisfy Article III." *TransUnion*, 141 S. Ct. at 2214.

In any event, the record establishes that Plaintiff consented in writing to the use of her personal information for identity verification and fraud prevention, not only by the bank but also by service providers acting on its behalf. And *every single time* Plaintiff called her bank during the relevant time period, she was specifically advised—*before* she said a word to a customer support representative—that her voice may be used to verify her identity. Each time she proceeded with the call. The notion that Plaintiff somehow suffered a concrete harm because her written consent referred to the use of *all* "personal information" for identification, without specifically calling out her voice—even though she was advised of the use of her voice on every call, before speaking— is too implausible to credit.

**Second**, Plaintiff fails to state a claim for multiple reasons. To begin with, Section 637.3 does not apply here as a matter of law. The statute's plain terms and legislative history make clear that Section 637.3 regulates lie detectors—that is, technology used "to determine the truth or falsity of statements made" by a person. *Id.* § 637.3(a). Plaintiff makes no factual allegation, nor can she, that Pindrop examined her "voice prints or other voice stress patterns" to *test the truth* of any particular statement she made on calls to her bank. She does not even plead what she allegedly said. Rather, she alleges only that her bank used an alleged "security feature" that "recognizes consumers" by "the sound of [their] voice." Compl. ¶ 19. This alleged "security feature" bears no resemblance to the amateur lie detectors that prompted the enactment of Section 637.3 over four decades ago. Plaintiff asks the Court to contort the law, by applying Section 637.3 for the first time *ever* to circumstances well beyond its terms and intent: not to a lie detector, but to software used by financial institutions to comply with their federal statutory duty to protect customers from identity theft. This perverse result should be rejected.

Additionally, Plaintiff has not adequately pled a basis for the remedies she seeks. Plaintiff's

failure to allege any actual harm means that she cannot state a claim under Section 637.3, which requires that she was actually "injured by" the purported examination of her voice print or voice stress pattern. *Id.* § 637.3(c). And Plaintiff's claim for equitable relief fails for the additional reason that Section 637.3 does not provide for *any* equitable relief—and even if it did, equitable relief is unavailable where, as here, Plaintiff seeks a legal remedy for the same alleged violation. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844–45 (9th Cir. 2020).

**Third**, Plaintiff's attempt to expand a previously unused provision of California law to Pindrop is especially baseless because Pindrop is not subject to personal jurisdiction in California. Pindrop is a Delaware corporation with its principal place of business in Georgia, and Plaintiff pleads no facts suggesting that Pindrop purposefully directed any suit-related conduct at California. An out-of-state software provider like Pindrop that offers its products throughout the United States and beyond is not subject to personal jurisdiction in this state simply because Plaintiff's bank allegedly uses Pindrop's technology to authenticate calls received from California residents, among others. *See Walden v. Fiore*, 571 U.S. 277, 285–86 (2014) ("[I]t is the defendant's conduct that must form the necessary connection with the forum State.").

This case is a cynical effort at opportunism. No one was harmed, no one was tricked, and no statute was violated. The real harm would be to permit this case to go forward—and in so doing deter financial institutions from deploying cutting edge fraud-prevention technologies to protect their customers, and deter the development of innovative technology to combat continually evolving means of identity theft. Pindrop respectfully submits the case should be dismissed.

## II.     BACKGROUND

### A.     The Parties

Pindrop is an information security company based in Atlanta, Georgia, and incorporated in Delaware that "markets and sells" software and services to help businesses in the United States and internationally protect customer accounts from fraudsters. *See* Compl. ¶¶ 1, 9; King Decl. ¶ 3. Pindrop has fewer than 250 employees, and its only corporate office in the United States is in Atlanta. King Decl. ¶¶ 4-5.

Plaintiff alleges that Pindrop's technology has become "increasingly popular in the digital

era," as businesses seek to prevent fraud and protect their customers' accounts from unauthorized access. Compl. ¶ 2. Plaintiff alleges that Pindrop offers a range of technologies, including "best-in-class audio, voice, and AI technologies" to "provide added protection across the phone channel—authenticating customers and offering businesses a faster and personalized contact center experience." *Id.* ¶ 1.

Plaintiff Diana Packbiers is a customer of non-party Bank of the West. *Id.* ¶ 24.[2]

### B.      Plaintiff's Allegations

Plaintiff claims that Pindrop "examined her voice" and her "voice print" when she called Bank of the West because the bank's customer support line employed a "security feature" that allegedly was provided by Pindrop. *Id.* ¶¶ 18-19, 26, 27. Plaintiff claims that this "security feature" was used to "record[] and examine[]" her voice "[d]uring one of [her] calls" to the bank "to determine whether [Plaintiff] is the person she purports to be." *Id.* ¶¶ 19, 26-27. Plaintiff does not allege when she called Bank of the West, where she was when she made any call, or what she said on those calls.

Plaintiff asserts that "Pindrop's conduct disregards consumers' statutorily protected privacy right[]," *id.* ¶ 23, to be free from "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation." *Id.* ¶ 14. Plaintiff claims that she was therefore harmed by Pindrop because she was "exposed to the risks and harmful conditions" of Pindrop examining her voice and voice print. *Id.* ¶¶ 26, 29. Plaintiff claims that she did not consent "to Pindrop collecting her voice print or analyzing her voice for any purpose," *id.* ¶ 29, although she is silent as to whether she provided consent to Bank of the West.

---

[2] For the purposes of its request for dismissal under Rule 12(b)(6), Pindrop accepts as true the Complaint's allegations. While not necessary to resolve this Motion (or relied upon for any of its dismissal arguments at this stage), Pindrop notes that Plaintiff mischaracterizes the services that Pindrop provides to Bank of the West, which do not include Voice ID or any authentication services. *See* King Decl. ¶ 8. There is no factual basis for this lawsuit, and Pindrop reserves all rights should Plaintiff continue to pursue her baseless allegations.

### C.     Plaintiff's Agreements With Bank Of The West

Though Plaintiff alleges that she did not consent "to Pindrop" collecting or examining her voice, *id.* ¶ 28, she did provide several relevant consents to Bank of the West—the entity that she allegedly called and that allegedly used Pindrop's software during those calls. As a bank customer, Plaintiff agreed to Bank of the West's Deposit Account Disclosures, wherein she "expressly agree[d] and consent[ed] that" Bank of the West or any of its "service providers" could "monitor and record telephone calls." Olveira Decl. ¶ 13 & Ex. 1 at 62. Plaintiff also agreed to Bank of the West's Online and Mobile Service Agreement ("Online Terms"), which provided that Bank of the West and its "Service Providers" "reserve the right to use personal information about [Plaintiff]" to "perform fraud screening" and "to verify [her] identity." *Id.* ¶¶ 22, 26-29 & Exs. 6-11.

Bank of the West also disclosed that it uses a customer's voice to verify identity and that it collects voiceprints. Each time Plaintiff called Bank of the West during the relevant period, she would have heard an automated message before being connected to a representative: "To ensure quality service, your call may be monitored or recorded and your voice may be used to verify your identity." Gustafson Decl. ¶ 9. Plaintiff herself acknowledges that Bank of the West disclosed its use of voice recognition software on its website, including its use of a "security feature" called "Voice ID" that verifies customers' "identit[ies] by the sound of [their] voice when they call [the bank's] customer service center, assisting [the bank] in providing fast and secure access to [their] account." Compl. ¶ 19. Bank of the West also discloses that it collects "voiceprint" and other personal information to "authenticate individuals... [and] prevent fraud." Olveira Decl. ¶¶ 33-34.

### D.     Procedural History

Plaintiff originally filed this single-count action in San Bernardino County Superior Court. *See Packbiers v. Pindrop Security, Inc.*, No. CIV SB 2212635. Pindrop timely removed the case to the Central District of California, where it was assigned to District Judge Stanley Blumenfeld, Jr. *See Packbiers v. Pindrop Security, Inc.*, No. 22-cv-01427-SB-KK (C.D. Cal.). Plaintiff then asked Pindrop to consent to transfer the case to the Northern District of California. After Pindrop declined, Plaintiff voluntarily dismissed her case and re-filed a virtually identical complaint the same day in the Northern District of California, with only minor changes to the procedural and

1    venue allegations, including a new allegation that a "substantial part of the events giving rise to

2    Plaintiff's claims took place within *this* District." Compl. ¶ 12 (emphasis added).

3         Plaintiff seeks to represent a class of "[a]ll residents of the State of California who had their

4    voice prints recorded or examined by Pindrop to determine the truth or falsity of their statements."

5    *Id.* ¶ 31. On behalf of the putative class, Plaintiff seeks statutory damages of $1,000 per violation

6    under Section 637.3(c) as well as "injunctive and equitable relief as is necessary to protect the

7    interests of Plaintiff and the Class by requiring [Pindrop] to comply with" Section 637.3. *Id.* ¶ 44.

8    **III.    ARGUMENT**

9         **A.    Plaintiff Lacks Article III Standing**

10        Plaintiff's claim fails at the threshold because she did not suffer an injury at all, let alone

11   one that meets the requirements of Article III. Whether considered as a facial or factual matter,

12   there is no standing here. The Complaint on its face does not allege the sort of concrete,

13   particularized, and traditionally recognized harm required by *TransUnion*, and that alone requires

14   dismissal. But on top of that, the record establishes that Plaintiff had ample notice that her voice

15   could be used to verify her identity on calls to Bank of the West and specifically consented to the

16   use of her personal information for that purpose, thus underscoring that she could not have been

17   harmed by the conduct of which she now complains.

18             1.    Legal Standard

19        "To establish Article III standing, an injury must be 'concrete, particularized, and actual or

20   imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"

21   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). An injury is only

22   "concrete" if it is "real, and not abstract" and not merely "procedural." *TransUnion*, 141 S. Ct. at

23   2204, 2213 (quoting in part *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Risk of future harm

24   alone "cannot qualify as a concrete harm." *Id*. at 2211; *see also Clapper*, 568 U.S. at 409 (future

25   injuries must be "certainly impending"—a "possible future injury" is not enough).

26        "A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual." *Graham

27   v. Noom, Inc.*, 533 F. Supp. 3d 823, 829 (N.D. Cal. 2021). "A 'facial' attack asserts that a

28   complaint's allegations are themselves insufficient to invoke jurisdiction." *Id.* (quoting

1  *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014)). A "factual" attack

2  "contests the truth of the plaintiff's factual allegations" by "introducing evidence outside the

3  pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When addressing a factual

4  attack …, courts may consider evidence like declarations submitted by the parties, and the party

5  opposing the motion to dismiss has the burden of establishing [standing] by a preponderance of

6  the evidence." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022). Here, Plaintiff

7  cannot overcome either a facial or factual attack on her standing.

8  2.      Plaintiff's Allegations Are Facially Insufficient To Establish Standing

9  Plaintiff does not attempt to allege a single concrete injury that she has suffered: Plaintiff

10  does not claim that her bank account was breached, that she lost money, or that she was actually

11  harmed in any way. This is unsurprising, since this is a lawsuit about Bank of the West's use of a

12  "security feature" to *protect* Plaintiff and other bank customers from unauthorized access to their

13  accounts. Compl. ¶ 19. Without any concrete, particularized harm, the Complaint must be

14  dismissed, as Article III does not permit the Court to consider grievances without an injury

15  traceable to the defendant. *See TransUnion*, 141 S. Ct. at 2203.

16  Plaintiff claims in conclusory fashion that she was "exposed to the risks and harmful

17  conditions" created by Pindrop's alleged violation of Section 637.3. Compl. ¶¶ 27-29. That makes

18  no sense, and in any event is not a concrete harm. For starters, the Complaint does not identify any

19  such "risks" or "harmful conditions" created by the alleged violation of Section 637.3, much less

20  any that are particular to Plaintiff. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009)

21  (plaintiffs' injury must be "particularized as to themselves"). Nor could Plaintiff plausibly allege

22  that she was exposed to an increased "risk" or "harmful condition[]" given her own allegation that

23  Pindrop provides a "security feature" that is used to ensure that Plaintiff is "who she purports to

24  be"—in other words, that protects her account from fraudsters. Compl. ¶¶ 19, 26. Moreover, to the

25  extent that Plaintiff alleges she was "exposed to [] risks" that have not yet materialized, *id.* ¶ 29,

26  any such theoretical harm from the risk of something happening would be mere speculation, which

27  fails as a matter of law. *See TransUnion*, 141 S. Ct. at 2211 ("mere risk of future harm … cannot

28  qualify as a concrete harm"); *see also Clapper*, 568 U.S. at 409 (Article III requires more than a

1   "possible future injury").

2       Nor can Plaintiff argue that an alleged violation of Section 637.3 alone (*i.e.*, the alleged

3   violation of her "statutorily protected privacy rights," Compl. ¶ 23) is somehow a concrete injury.

4   To satisfy Article III, an injury must resemble one that has been "traditionally recognized" by

5   American courts. *TransUnion*, 141 S. Ct. at 2200. While some "intangible harms" like "disclosure

6   of private information" have been recognized as "providing a basis for lawsuits in American

7   courts" (and thus support Article III standing), the facts of this case do not give rise to the kind of

8   privacy harm that has been "traditionally recognized." *Id*. at 2204. The "acoustic and behavioral

9   features" of Plaintiff's voice, Compl. ¶ 20, are not private. The Supreme Courts of the United

10  States and of the State of California agree that "[t]he physical characteristics of a person's voice,

11  its tone and manner" are "constantly exposed to the public" and no person "can reasonably expect"

12  they will be private. *United States v. Dionisio*, 410 U.S. 1, 14 (1973); *see United States v. Mara*,

13  410 U.S. 19, 21 (1973) (the "tone of [one's] voice" carries no "expectation of privacy" because it

14  is publicly shared); *People v. Ellis*, 421 P.2d 393, 396 (Cal. 1966) (In Bank) ("[o]ne's voice is

15  hardly of a private nature," because it is "constantly exposed to public observation"). That maxim

16  is plainly applicable here, where Plaintiff chose to call Bank of the West "on numerous occasions,"

17  and chose to speak with customer services representatives and expose her voice. Compl. ¶¶ 25, 27.

18      Moreover, Plaintiff's own allegations indicate that Bank of the West publicly disclosed

19  that it "uses biometric voice recognition technology ... that verifies your identity by the sound of

20  your voice when you call our customer service center." *Id.* ¶ 19. Under these circumstances,

21  Plaintiff cannot plausibly claim that she was unaware that her voice was being used to verify her

22  identity, such that she might have a reasonable expectation of privacy in any statements made on

23  those calls. *See Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (finding

24  no Article III privacy injury from collection of IP address because "[d]evice users should know

25  that [IP address] information is provided to and used by Internet service providers for the specific

26  purposes of directing the routing of information" (alteration in original, quotation marks omitted));

27  *see also Khachatourian v. Hacienda La Puente Unified Sch. Dist.*, 572 F. App'x 556, 558 (9th Cir.

28  May 16, 2014) (teacher had no reasonable expectation of privacy in classroom and desk drawers

where he was "on notice" that those areas could be searched); *Hernandez v. Hillsides, Inc*., 211 P.3d 1063, 1073 (Cal. 2009) ("plaintiff's expectations of privacy must be reasonable," and must be evaluated in the context of "customs, practices, and physical settings surrounding" the alleged activities (citation omitted)).

Plaintiff's allegation that Pindrop failed to obtain her consent as required by Section 637.3 does not help either. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [her] a statutory right." *TransUnion*, 141 S. Ct. at 2205. Plaintiff was aware that her voice was being heard by someone on the phone—and, as discussed, she therefore suffered no intrusion of her private information because she had no reasonable expectation of privacy in the information conveyed to begin with.

Devoid of an actual privacy injury, Plaintiff's only remaining complaint is essentially that she was not "inform[ed]" that her voice would be used "to determine the truth or falsity of [her] statements." Compl. ¶ 22. But a claim about "fail[ure] to receive any required information" is a non-actionable "informational injury" that "cannot satisfy Article III" where, as here, it "causes no adverse effects." *TransUnion*, 141 S. Ct. at 2214. Plaintiff does not allege any concrete harm she suffered from Pindrop supposedly failing to obtain her consent, much less explain how she would have behaved differently had she been presented with further information about the use of her voice. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (plaintiff did not allege  cognizable injury under Article III because he did not allege an "interest in using the information"); *Murray v. Time Inc.*, No. C 12-00431 JSW, 2012 WL 3634387, at *6 (N.D. Cal. Aug. 24, 2012) (plaintiff failed to allege what he would have done with contact information he claims should have been provided), *aff'd*, 554 F. App'x 654 (9th Cir. 2014).

Plaintiff does not allege any adverse effects or "'downstream consequences' from failing to receive the required information" about the use of her voice. *TransUnion*, 141 S. Ct. at 2214 (citation omitted). Because Plaintiff lacks a privacy injury and her only remaining allegation is that Pindrop failed to provide her with "information that she d[oes] not suggest that she would ever have used," she lacks Article III standing and the Complaint should be dismissed. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 334, 338–39 (7th Cir. 2019).

3.   The Record Confirms That Plaintiff Lacks Standing

Even if there were any doubt as to whether the Complaint facially alleged a cognizable theory of privacy harm, it is laid to rest by the record here. On a factual challenge to standing, the Court can consider additional evidence, and here, the evidence shows that Plaintiff: (1) expressly consented to monitoring or recording of her calls by Bank of the West's service providers *and* their use of personal information to verify her identity and (2) was repeatedly notified that her calls would be recorded and her voice would be used to verify her identity. Though Plaintiff alleges that she did not provide her consent to Pindrop (as opposed to the bank, on behalf of itself and its service providers), her complaint is meritless—and even if the Court were to indulge it, it states at most a procedural grievance that does not establish standing. An injury is only "concrete" if it is "real, and not abstract" and not merely "procedural." *TransUnion*, 141 S. Ct. at 2204, 2213 (quoting in part *Spokeo*, 578 U.S. at 341).

*First*, Plaintiff agreed that Bank of the West and its service providers like Pindrop could monitor her calls and use her personal information to verify her identity. When she affirmatively accepted Bank of the West's Online Terms, Plaintiff "agree[d] that [Bank of the West], any of [its] affiliates, agents, independent contractors or Service Providers [could] monitor and record telephone calls regarding [her] Service to assure the quality of [Bank of the West's] service or for other reasons." Olveira Decl. ¶ 30. At that time, Plaintiff also specifically authorized the use of her "personal information" by Bank of the West or its "Service Providers" to "verify [Plaintiff's] identity" and "perform fraud screening." *Id.* ¶ 29. In California, voice recordings and voiceprints are considered types of "personal information." *See, e.g.*, Cal. Civ. Code § 1798.140(o) & (b) (defining voice prints as biometric information and all biometric information as personal information). Additionally, from the moment Plaintiff opened her account in 2009, and when she updated her account information in 2014, she agreed under the Deposit Account Disclosures that her calls could be "monitored or recorded to ensure quality service." Olveira Decl. ¶¶ 14, 16 & Exs. 3-4. Separate or apart, these agreements demonstrate that Plaintiff's alleged harm based on lack of consent is baseless.

*Second*, contrary to Plaintiff's claim that she was unaware that her calls to Bank of the

West would be recorded and used to determine "whether [she] is the person who she purports to be," Compl. ¶ 26, Plaintiff was advised that the bank protected her account in exactly that way. ***Every time*** Plaintiff called Bank of the West during the relevant period,[3] she heard a recording: "To ensure quality service, ***your call may be monitored or recorded*** and your ***voice may be used to verify your identity***." Gustafson Decl. ¶ 9 (emphasis added). Despite hearing this recording every time she called, Plaintiff herself acknowledges that she continued to call Bank of the West "on numerous occasions," Compl. ¶ 25, and in fact Plaintiff did so at least nine times before filing this case. Gustafson Decl. ¶¶ 12-13. And Plaintiff also acknowledges that Bank of the West disclosed on its website its use of "voiceprint[s]" and that it "verifies [a caller's] identity by the sound of [their] voice." Compl. ¶ 19. On top of that, Bank of the West's website disclosed to Plaintiff and the public that it collects "audio, biometric (voiceprint)" and other "personal information" from "calls on recorded lines" in order to "authenticate individuals," "secure your information, [and] prevent fraud." Olveira Decl. ¶¶ 33-34. Plaintiff also agreed that Bank of the West and its "service providers" may "use personal information about [Plaintiff]" to "perform fraud screening" and "to verify [Plaintiff's] identity." *Id.* ¶¶ 22, 29. Plaintiff cannot claim that she had an "expectation of privacy" that her voice or statements made during calls with Bank of the West customer support would not be used for the "specific purpose of" preventing fraud and verifying her identity. *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *see Heeger*, 509 F. Supp. 3d at 1189–90 (citing *Forrester* and finding no Article III standing for privacy injury).

Against this backdrop, Plaintiff cannot plausibly claim that she was harmed in any way by the bank's alleged use of Pindrop's software to protect her account, and the Complaint should be dismissed for lack of standing.

### B.     Plaintiff Has Not Stated A Claim Against Pindrop

Plaintiff's Complaint should also be dismissed because it does not state any claim against Pindrop under Section 637.3(a)—a CIPA provision that was enacted in response to 1970s-era concerns over the covert use of pseudoscientific lie detectors and that prohibits the "use [of] any

---

[3] The limitations period for a CIPA claim is one year. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020).

system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent."[4] *Id.* Plaintiff's gripe with Pindrop's "voice recognition software" (Compl. ¶ 2) fails to plausibly plead (1) use of the lie detector technology that the legislature intended to regulate under Section 637.3, or (2) an injury, as required for a private right of action. And (3) Plaintiff fails to plead a basis for injunctive or other equitable relief.

### 1.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### 2.   Section 637.3(a) Does Not Apply To The Conduct Plaintiff Alleges

As a matter of straightforward statutory interpretation, Section 637.3 does not apply to the consumer-protective voice recognition software alleged in this case.

Federal courts "interpret[] California statutes in accordance with California principles of statutory construction." *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 807 (N.D. Cal. 2020). "Under California law, the goal of statutory interpretation 'is to determine the Legislature's intent so as to effectuate the law's purpose.'" *Hallmark Specialty Ins. Co. v. Continental Ins. Co.*, No. 20-17314, 2022 WL 382037, at *2 (9th Cir. Feb. 8, 2022) (quoting *Sierra Club v. Sup. Ct.*, 302 P.3d 1026, 1031 (Cal. 2013)). In interpreting statutes, California courts look "to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness

---

[4] As discussed *infra* Section III.B.2, Section 637.3 was a response to the use of amateur lie detectors that debuted in the 1970s. *See* Decl. of Melanie M. Blunschi ("Blunschi Decl."), Ex. 1 at 15 (Ltr. from Assemblyman Richard Lehman to Gov. Jerry Brown, A.B. 2798, 1977–78 Reg. Sess. (Aug. 31, 1978) (explaining the law's "purpose" was to "protect the public" from "voice stress analyzers.")); *see also People v. Tarsia*, 405 N.E. 2d 188, 190 (N.Y. Ct. App. 1980) (explaining that "voice stress evaluator[s]" arrived "in the last decade").

of a proposed construction." *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1121 (9th Cir. 2022) (quoting *Riverview Fire Prot. Dist. v. Workers' Comp. Appeals Bd.*, 23 Cal. App. 4th 1120 (1994)). Arriving at a "reasonable interpretation" requires avoiding any construction that would result in "absurd consequences," *People v. Bullard*, 460 P.3d 262, 269 (Cal. 2020), and considering the proposed construction's "impact on public policy," *Martinez v. Combs*, 231 P.3d 259, 268 (Cal. 2010).

Here, both the plain language of Section 637.3 and the legislative history confirm that the consumer-protective voice recognition software alleged in this case is not remotely like the discredited amateur lie detectors that the California Legislature aimed to regulate when it enacted Section 637.3 in 1978.

***Plain Meaning:*** To state a claim under Section 637.3, Plaintiff must allege that Pindrop examined her voiceprint or voice stress pattern "to determine the truth or falsity of statements [that she] made." *Id.* § 637.3(a). She does not allege any facts to support that Pindrop recorded or examined her voiceprints for that purpose. Indeed, she does not even allege any statements she made at all. Accordingly, the Complaint must be dismissed. *See Twombly*, 550 U.S. at 562 (a complaint must allege "all the material elements" of a claim to avoid dismissal (citation omitted)).

All Plaintiff alleges is that Bank of the West used Pindrop's "voice recognition software" to confirm her identity using her voice. *See* Compl. ¶ 18 (alleging that Pindrop "integrates" its software into Bank of the West's call centers); *id.* ¶ 19 (alleging that Pindrop's software "recognizes consumers' identities"); *id.* ¶ 26 (alleging that Pindrop "examined her voice … to determine whether [Plaintiff] is the person who she purports to be"). The Complaint is devoid of any factual allegations concerning the alleged statements that Plaintiff made when calling her bank (such as when she called the bank, where she was when she made the call, or what she said)—still less what statements the alleged "voice recognition software" tested for their truth. Rather, Plaintiff alleges that Pindrop "authenticates" callers by comparing a caller's voice to a prior "voice print [Pindrop] stored in its database from previous calls" to determine whether the voices match up. *Id.* ¶¶ 1-2, 18-20, 25-26.

Indeed, Plaintiff does *not* allege that the voice authentication software authenticates callers

based on the content of the speaker's statement. That is fatal. Without any well-pleaded allegations, there are an infinite number of potential statements that could have been used to authenticate Plaintiff based on her voice without examining the truth or falsity of any statement she made. For example, the software could have authenticated Plaintiff by analyzing her voice and comparing it to prior analyses of her voice simply when she stated "Hello"—a statement that is not even susceptible to a truth or falsity analysis—or "I am Diana Packbiers," "I'm the man in the moon," or "The moon is made of green cheese," even though at least one of the statements is false. Because Plaintiff fails to allege any facts suggesting that Pindrop's alleged voice authentication software was used "to determine the truth or falsity" of any particular statement(s) she made, she fails to state a claim under Section 637.3.

**_Legislative History:_** Section 637.3's legislative history only reinforces the conclusion that Plaintiff's claim is beyond the statute's intended reach. *See Heckart v. A-1 Self Storage, Inc.*, 415 P.3d 286, 297 (Cal. 2018) (explaining that "even absent ambiguity in statutory language," California courts may look to "available legislative history" to "buttress[]" statutory construction (citation omitted)). The law's "purpose," as explained by the author of the bill, was to "protect the public" from "voice stress analyzers." Blunschi Decl., Ex. 1 at 15. Although "hand-held voice analyzer[s] about the size of a pocket calculator c[ould] be an extremely effective law-enforcement tool," the legislature sought to regulate their use by "amatures [*sic*]" so that "people [w]ould not have to worry every time they start conversations that their voices may be recorded for future use against them." *Id.* The legislative materials include a contemporaneous advertisement regarding a particular device known as the Hagoth Voice Stress Analyzer, which was marketed as the "ultimate [business] executive tool" capable of "measur[ing] the presence or absence of voice stress." *Id.* at 26 (*Clipper*, Vol. 18, No. 3, A.B. 2798, 1977–78 Reg. Sess. (Mar. 1978)).[5] According to the Senate

---

[5] A contemporaneous news article quoted the device's creator as suggesting "[b]usiness executives" could use the Hagoth "to detect how reliable suppliers are likely to be, whether another company discussing a merger is really interested or just shopping around, whether a suit can be settled out of court, [and] how honest fellow executives are." Blunschi Decl., Ex. 2 (H.R. Kleinfield, *Telephone Voice Analyzer Is Designed to Spot a Liar*, The New York Times, Feb. 20, 1978, https://www.nytimes.com/1978/02/20/archives/telephone-voice-analyzer-is-designed-to-spot-a-liar-telephone-voice.html#:~:text=A%20Hagoth%20Is%20%E2%80%90a%20voice, work%20directly%20over%20a%20phone. The article is properly considered on this Motion as it

Judiciary Committee's bill analysis, "expert testimony" indicated that such devices "may not be accurate" because they could not necessarily "differentiate from stress resulting from lying and that resulting from some other cause." Blunschi Decl., Ex. 1 at 33-35 (Senate Judiciary Comm., A.B. 2798, 1977–78 Reg. Sess., at 6–7); *see also id.* at 38 (explaining that bill's purpose was to "limit the abuse" of "psychological stress evaluators").

Plaintiff does not allege—nor could she—that the authentication services she alleges in this case are anything like the roving lie detectors that the legislature intended to prohibit under Section 637.3. Plaintiff does not allege that Pindrop's software evaluates "psychological stress," *id.*, nor does she allege that Pindrop recorded her voice to use it "against [her]." Blunschi Decl., Ex. 1 at 15 (Ltr. from Lehman to Brown, A.B. 2798). Quite the opposite. Plaintiff concedes that Pindrop's software serves a protective purpose: "authenticat[ing] the identities of … customers calling into [business] call centers." Compl. ¶ 2; *see also id.* ¶ 1 (alleging that Pindrop describes its software as "provid[ing] added protection across the phone channel"); *id.* ¶ 19 (alleging that Bank of the West uses a "security feature"); *id.* ¶ 26 (alleging that Bank of the West used Pindrop's software to verify her identity). In fact, Plaintiff alleges that Pindrop's software is meant to confirm she "is the person who she purports to be," *id.* ¶ 26—in other words, it protects Plaintiff from fraudsters attempting to access her bank account. Accordingly, Plaintiff fails to allege the sort of surreptitious and suspect voice analysis that Section 637.3 was enacted to prohibit.

***Reasonableness:*** Plaintiff's expansive reading of Section 637.3 must be rejected for the further reason that it leads to absurd consequences and is contrary to sound public policy. Plaintiff acknowledges that the technology Bank of the West allegedly used to authenticate her is a "security feature" that is designed to confirm that Plaintiff is "the person who she purports to be" when she calls her bank. *Id.* ¶¶ 19, 26. Extending the statute to technology that is meant to protect customers like Plaintiff would also have troubling public policy consequences. Federal law requires financial

---

contains "legislative facts"—facts "which have relevance to legal reasoning and the lawmaking process." Fed. R. Evid. 201 Advisory Committee's Note (1972) (distinguishing "adjudicative facts," which are "simply the facts of a particular case" and require judicial notice from legislative facts). Courts may consider legislative facts without taking judicial notice of them. *See, e.g.*, *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175-LB, 2015 WL 6123054, at *7 (N.D. Cal. Oct. 19, 2015).

institutions to create and implement a program "that is designed to detect, prevent, and mitigate identity theft," 16 C.F.R. § 681.1(d)—a crime to which roughly 9 million Americans fall victim every year.[6] Permitting customers to collect statutory damages based on the use of security software by their banks(s) or other financial institutions to reduce fraud and identity theft would have the perverse incentive of deterring institutions from deploying such technology to protect their customers and combat the "constantly"-evolving "[t]echnology and criminal techniques" used by identity thieves. *Id.* Plaintiff's unreasonable theory of Section 637.3 liability should be rejected. *See Pacific Gas & Elec. Co. v. Sup. Ct.*, 10 Cal. App. 5th 563, 580 (2017) (rejecting statutory construction that "le[d] to problematic results").

### 3.   Plaintiff Does Not Allege Injury, As Required By Section 637.3(c)

Plaintiff's lack of injury is fatal to not only her ability to bring her claim in federal court under Article III, as explained *supra* Section III.A, but also to her ability to state a claim under California law because Section 637.3 limits private rights of action to persons "injured by" a violation of the statute. Cal. Penal Code § 637.3(c).

Likely because Section 637.3 was not meant to provide a vehicle for a sprawling privacy class action challenging modern consumer-protective software like Plaintiff alleges here, no court has been called upon to construe the injury element of Section 637.3(c). But the Court is not writing on a blank slate, as principles of statutory construction—and other parts of the same statute—make plain that the "injured by" provision requires Plaintiff to plead that Pindrop caused her *actual harm*. Courts have interpreted similar "injured by" language in other California statutes to require a showing of "concrete harm." *See, e.g.*, *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *40 (N.D. Cal. Aug. 30, 2017) (plaintiff seeking relief for lack of notice required by California Customer Records Act must plead "concrete harm result[ing] from" violation where statute's remedies provision states that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages").

That actual harm is required here is further confirmed by comparison to CIPA's remedy

---

[6] Fed. Trade Comm'n, *Fighting Identity Theft with the Red Flags Rule: A How-To Guide for Business* (May 2013), https://www.ftc.gov/business-guidance/resources/fighting-identity-theft-red-flags-rule-how-guide-business.

provision for violations of its prohibitions on wiretapping and eavesdropping (not alleged here). Unlike Section 637.3, that provision expressly provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(c). This exemption from showing harm does _not_ appear in Section 637.3(c), which the legislature enacted 10 years _after_ Section 637.2(c). _See_ Cal. Stats. 1967, c. 1509, p. 3588, § 1. The fact that Section 637.3(c), which is "another part of the statute" (_i.e._, CIPA), lacks that same exemption shows that "the Legislature intended to convey a different meaning." _Jarman v. HCR ManorCare, Inc._, 471 P.3d 1001, 1007 (Cal. 2020) (citation omitted); _see also Vidrio v. United Airlines, Inc._, No. CV-157985-PSG-MRWX, 2022 WL 1599918, at *11 (C.D. Cal. May 6, 2022) (applying same canon to construe California statute). Specifically, the absence of this exemption in Section 637.3(c) indicates that the legislature intended to limit the class of persons who can seek relief under Section 637.3(c) to those actually "injured by" the alleged violation.

Here, Plaintiff has not plausibly alleged _any_ harm—and she cannot. _See supra_ Section III.A. Accordingly, she has not alleged that she was "injured by" the alleged violation of Section 637.3 and cannot bring a claim under the statute.

### 4.    Plaintiff Has Not Pled A Basis For Equitable Relief

Plaintiff's request for injunctive or other equitable relief under Section 637.3 fails for the additional reason that equitable relief is neither authorized by the statute nor adequately pled.

Section 637.3 exclusively authorizes relief in the form of "_actual damages_ or one thousand dollars," Cal. Penal Code § 637.3(c) (emphasis added), but nowhere provides for equitable relief, which alone dooms Plaintiff's request. The "remedy for a state-law claim—even if brought in federal court—is defined by the state statute that created the claim." _Bateman v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa._, 423 F. App'x 763, 766 (9th Cir. 2011). Federal courts may not grant equitable relief for violations of a state statute, like here, that "provides relief only in the form of money damages." _Id._; _see also Cell Assocs., Inc. v. Nat'l Institutes of Health, Dep't of Health, Ed. & Welfare_, 579 F.2d 1155, 1160 (9th Cir. 1978) (holding that district court could not award "injunctive relief to prevent a violation of" statute that did not provide such relief).

In any event, even if equitable relief were available, the Ninth Circuit's decision in *Sonner* bars Plaintiff's request for it. In *Sonner*, the Ninth Circuit held "that the traditional principles governing equitable remedies in federal courts" apply to state law claims, including the requirement that a plaintiff plead that they lack an "adequate legal remedy." 971 F.3d at 839 n.2, 844–45; *see also Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1129 (9th Cir. 2020) ("'The necessary prerequisite' for a court to award equitable remedies is 'the absence of an adequate remedy at law.'" (citation omitted)). Here, Plaintiff does not and cannot allege that her legal remedies are inadequate—indeed, she alleges a single claim that provides monetary relief, a classic legal remedy. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (referring to "remedies available at law, such as monetary damages"); *Price v. Apple, Inc.*, No. 21-CV-02846-HSG, 2022 WL 1032472, at *7 (N.D. Cal. Apr. 6, 2022) (dismissing claims seeking equitable relief for "the exact same conduct" as monetary relief claims). Accordingly, Plaintiff's request for equitable relief should be dismissed.

### C. Pindrop Is Not Subject To Personal Jurisdiction In California

Plaintiff's attempt to revive an obscure and inapposite section of the Penal Code that has been dormant for over 40 years should be dismissed for the additional reason that Pindrop is an out-of-state corporation that is not subject to personal jurisdiction in California.

#### 1. Legal Standard

A court may not exercise personal jurisdiction over a nonresident defendant unless the defendant has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (citation omitted). Personal jurisdiction may be "general or all-purpose jurisdiction" or only "specific or conduct-linked." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). "The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction." *Ji v. Naver Corp.*, No. 21-cv-05143-HSG, 2022 WL 4624898, at *3 (N.D. Cal. Sept. 30, 2022) (citation omitted). Where, as here, a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff "bear[s] the burden of demonstrating that jurisdiction is appropriate," including making a "prima facie showing

1   of jurisdictional facts … based on affirmative proof beyond the pleadings, such as affidavits,

2   testimony or other competent evidence of specific facts." *Vallarta*, 497 F. Supp. 3d at 797 (citation

3   omitted). In deciding a motion to dismiss for lack of personal jurisdiction, the court "may not

4   assume the truth of allegations in a pleading which are contradicted by affidavit." *Ji*, 2022 WL

5   4624898, at *3.

6   Here, Pindrop is not subject to either general or specific personal jurisdiction in California.

7   ## 2.   Pindrop Is Not Subject To General Jurisdiction In California

8   Plaintiff does not argue that general personal jurisdiction exists over Pindrop, and for good

9   reason: it requires contacts with the forum "so constant and pervasive 'as to render [the defendant]

10  essentially at home in the forum State,'" which, for a corporation, effectively means either its

11  (1) place of incorporation or (2) principal place of business. *Daimler*, 571 U.S. at 137 (citation

12  omitted). Pindrop is a Delaware corporation with its principal place of business in Georgia. Compl.

13  ¶ 9; King Decl. ¶ 4. Plaintiff does not (and cannot) claim that Pindrop is "essentially at home" in

14  California. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1022, 1024

15  (2021) (no general jurisdiction in Minnesota or Montana over Ford, a global auto company

16  incorporated in Delaware and headquartered in Michigan).

17  ## 3.   Pindrop Is Not Subject To Specific Jurisdiction In California

18  The Court also lacks specific personal jurisdiction over Pindrop. The exercise of specific

19  jurisdiction here would require that: (1) Pindrop "purposefully directed" its conduct at California;

20  (2) Plaintiff's claim "arises out of or relates to" Pindrop's "forum-related activities"; and (3) the

21  exercise of jurisdiction "comports with fair play and substantial justice, *i.e.*, it [is] reasonable."

22  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Ford*, 141

23  S. Ct. at 1024–25. None of those elements is met here, where Plaintiff's theory of jurisdiction is

24  based on the California contacts of herself and her bank (Bank of the West)—not Pindrop.

25  ***No Purposeful Direction:*** Plaintiff pleads no facts indicating that Pindrop took any

26  intentional action aimed at California that is likely to cause harm in California. *See Axiom Foods,*

27  *Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citation omitted) (purposeful

28  direction requires that a defendant "(1) commit[] an intentional act, (2) expressly aimed at the

forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state"); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 511 (C.D. Cal. 2021) (dismissing CIPA case for lack of specific jurisdiction).

All Plaintiff alleges is that Pindrop "contracts to do business" with companies that have a presence in California—with Bank of the West as the sole example—and that Plaintiff is a California resident who allegedly was exposed to Pindrop's technology when she called Bank of the West. Compl. ¶ 11. Even if Plaintiff were accurately characterizing the services Pindrop offers Bank of the West (she is not, *see supra* n.2), her allegations would fall well short of establishing purposeful direction because she seeks to establish jurisdiction in California based *not* on Pindrop's "own affiliation with the State," but on the "contacts [it] ma[de] by interacting with other[s] … affiliated with the State." *Walden*, 571 U.S. at 286. The Supreme Court has emphatically rejected that approach, as have district courts in this Circuit. *See id.*; *Balboa Capital Corp. v. Shaya Med. P.C. Inc.*, No. SACV-2100831-CJC-JDEX, 2021 WL 6104013, at *4 (C.D. Cal. Sept. 7, 2021) (no purposeful direction where defendant's acts "are primarily aimed at a[n] … entity in the state rather than the state itself"); *Hungerstation LLC v. Fast Choice LLC*, No. 19-cv-05861-HSG, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020) (no purposeful direction where defendants "accessed servers owned by third parties that happen[ed] to be based in or ha[d] servers in California").

First, Plaintiff's conclusory allegation that Pindrop contracts with Bank of the West or other unspecified companies in California does not suggest that Pindrop "primarily aimed" its services at the California market itself. *Id.* Pindrop offers its technologies across the United States and internationally, King Decl. ¶ 3, and Plaintiff does not allege that Pindrop does business primarily in California. Courts in this Circuit have repeatedly declined to exercise jurisdiction over non-resident companies based on allegations that such companies have done business with third parties in the forum, among others in other forums. *See Baton v. Ledger SAS*, No. 21-CV-02470-EMC, 2021 WL 5226315, at *6 (N.D. Cal. Nov. 9, 2021) (allegation that Delaware corporation "solicit[ed] customers and transact[ed] business in California" insufficient to maintain data breach lawsuit against corporation in California); *Bungie, Inc. v. Thorpe*, No. 21-CV-05677-EMC-DMR,

2021 WL 5178825, at *6 (N.D. Cal. Nov. 8, 2021) ("Plaintiffs' non-specific allegations that the … Defendants conduct business with and market to … California users, and contract with forum-based third-parties are insufficient to establish purposeful direction."). Second, Plaintiff's allegation that she is a California citizen (Compl. ¶ 8) likewise cannot support the exercise of personal jurisdiction. *See Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."); *Rain Design, Inc. v. Spinido, Inc.*, No. 17-CV-03681-JSC, 2018 WL 7269019, at *4 (N.D. Cal. Nov. 15, 2018) ("[T]hat Plaintiff is located in California is insufficient to establish personal jurisdiction.").

This is not simply a pleading problem. Pindrop does not own or operate *any* corporate offices in California; all it has is a recent short-term lease for a workspace at WeWork in California for one employee. King Decl. ¶¶ 4, 6. And the presence of a single Pindrop *customer* in California does not provide grounds for jurisdiction over *Pindrop*, particularly where that customer (Bank of the West) has branches and offices in nearly two dozen other states, and the customer call centers that allegedly "incorporated" Pindrop's software (and the servers supporting them) are not in California. *See* Gustafson Decl. ¶ 7; Olveira Decl. ¶ 9. Further, an agreement between Pindrop and Bank of the West identifies Omaha, Nebraska and Lakewood, Colorado as the server locations where it intended to deploy Pindrop's anti-fraud software. King Decl. ¶ 7. In light of these facts, Plaintiff's failure to plead purposeful direction cannot be saved by amendment. *See Baton*, 2021 WL 5226315, at *6 ("[A] finding of purposeful direction cannot 'be based on the mere fact that [a company] provides services to customers nationwide, including but not limited to California.'" (citing *Caces-Tiamson v. Equifax*, No. 20-CV-00387-EMC, 2020 WL 1322889, at *3 (N.D. Cal. Mar. 20, 2020)); *see also id.*, at *14 (denying amendment).

**Claims Not Related to Pindrop's Forum-Related Activities:** Plaintiff also pleads no facts indicating that her claim arises out of or relates to any California-directed conduct by Pindrop. The entire premise of Plaintiff's claim is that nonparty Bank of the West "integrate[d]" software allegedly provided by Pindrop into Bank of the West's call centers. Compl. ¶ 3. But Plaintiff's conclusory allegation that "the conduct alleged in this Complaint occurred in, and/or emanated from" California (*id.* ¶ 11) is insufficient to establish personal jurisdiction. *See Alexandria Real*

1    *Estate Equities, Inc. v. RUNLABS (UK) Ltd.*, No. 18-CV-07517-LHK, 2019 WL 4221590, at \*13

2    (N.D. Cal. Sept. 5, 2019) ("[C]onclusory allegations are not sufficient to demonstrate that the Court

3    has personal jurisdiction over Defendants." (citation omitted)).

4        Plaintiff cannot meet her burden merely by alleging "on information and belief" that her

5    calls were routed to a Bank of the West contact center in California. Compl. ¶ 12; *see Reflex Media,*

6    *Inc. v. Chan*, No. SACV-16795-JFW-JEMX, 2020 WL 6694316, at \*3 (C.D. Cal. Oct. 30, 2020)

7    ("[J]urisdictional allegations based on information and belief are insufficient to confer

8    jurisdiction."). For one thing, Bank of the West's call centers for personal banking customers like

9    Plaintiff are not in California. Gustafson Decl. ¶ 7 (call centers are in Arizona and Nebraska). But

10   even if they were, the fact that Plaintiff called a Bank of the West call center in California would

11   have nothing to do with *Pindrop's* contacts with California. *See Hungerstation*, 2020 WL 137160,

12   at \*5 ("[T]he mere location of a third party or its servers is insufficient to give rise to personal

13   jurisdiction."). And here, Pindrop did not expect any software provided to Bank of the West to be

14   deployed in California. *See* King Decl. ¶ 7.

15        ***Not Consistent With Fair Play and Substantial Justice:*** Because Plaintiff fails to

16   "satisfy[] the first two prongs of the specific personal jurisdiction test," there is no "need [to] reach

17   the third prong." *Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*, No. 20-CV-08493-LHK,

18   2021 WL 3053201, at \*10 (N.D. Cal. July 20, 2021) (citing *Schwarzenegger*, 374 F.3d at 802).

19   But the exercise of personal jurisdiction here would violate any notion of "fair play and substantial

20   justice." *Ford*, 141 S. Ct. at 1024 (citation omitted); *see Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th

21   972, 984 (9th Cir. 2021) (setting forth relevant factors).

22        Litigating this case in California would impose a substantial burden on Pindrop, which

23   maintains its sole U.S. office in Georgia and employs fewer than 250 individuals in the United

24   States and worldwide, more than 95% of whom reside and work outside of California. *See* King

25   Decl. ¶¶ 4-5; *cf. Automobile Protection Corp. v. Jones*, No. 1:04-CV-2368-WBH, 2005 WL

26   8154748, at \*2 (N.D. Ga. Feb. 1, 2005) (recognizing burden of requiring corporation that

27   "maintain[ed] offices, employees, [and] managers" in Georgia, to litigate in California). Pindrop

28   does not own or operate any office or facility in California; it merely leases a short-term workspace

in California from WeWork for one employee, who joined Pindrop in 2022. King Decl. ¶ 6. California also does not have any "interest in adjudicating [a] dispute" with a nonresident entity that is not alleged to have interacted with Plaintiff (or other putative class members). *Ayala,* 11 F.4th at 984. And there is no reason to believe that a federal court in California "would provide the most efficient judicial resolution" compared to a court in Georgia or Delaware. *Ayla*, 11 F.4th at 984 (quotation marks and citation omitted). Indeed, this District is one of the busiest federal dockets in the country, and is "currently in a judicial emergency resulting from increased case volumes, COVID-19 backlogs, limited resources, and judicial vacancies." *Ramirez v. Bank of Am., N.A.*, No. 4:22-cv-00859-YGR, 2022 WL 2313151, at *7 n.7 (N.D. Cal. June 15, 2022). Quite simply, there is no reason for this case to proceed in California—and many reasons it should not.

## IV.    CONCLUSION

For these reasons, Pindrop respectfully requests that the Court dismiss the Complaint.

Dated: October 28, 2022                         LATHAM & WATKINS LLP

By  */s/ Melanie M. Blunschi*
Michael H. Rubin
 *michael.rubin@lw.com*
Melanie M. Blunschi
 *melanie.blunschi@lw.com*
Francis J. Acott
 *francis.acott@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

*Attorneys for Defendant Pindrop Security, Inc.*